1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARRIEM SHAHEED, | Case No. 1:20-cv-01450-SAB (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION |
| v. | |
| S. SHERMAN, et al., | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | (ECF No. 28) |

Plaintiff Karriem Shaheed is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed February 8, 2022.

## I.

## RELEVANT BACKGROUND

This action is proceeding against Defendants S. Sherman, J. Martin, E. Burden, K.J. Allen, Scott Kernan, and Does 1 through 31 for unconstitutional conditions of confinement in violation of the Eighth Amendment.

On September 20, 2021, Defendants filed an answer to the complaint.  (ECF No. 19.)

///
///

1   On November 22, 2021, a settlement conference was conducted but the parties did not

2   reach an agreement.  Therefore, on November 29, 2021, the Court issued the discovery and

3   scheduling order.  (ECF No. 27.)

4   On February 8, 2022, Defendants filed the instant motion for summary judgment, along

5   with a motion to stay discovery.   (ECF Nos. 28, 29.)

6   On May 2, 2022, Plaintiff filed an opposition to Defendants' motion to stay discovery,

7   and a separate motion to defer ruling on Defendants' motion for summary judgment.  (ECF Nos.

8   34, 35.)

9   On May 12, 2022, Defendants filed a reply to Plaintiff's opposition and an opposition to

10   Plaintiff's motion to defer ruling on the pending motion for summary judgment.  (ECF No. 36.)

11   On May 17, 2022, the Court granted, in part, Defendants' motion to stay, granted

12   Plaintiff's motion to defer ruling on the motion for summary judgment, and granted Plaintiff

13   until July 25, 2022, to file an opposition.  (ECF No. 37.)  Plaintiff has failed to file an opposition

14   and the time to do so has now passed.

15   **II.**

16   **LEGAL STANDARD**

17   **A.    Summary Judgment Standard**

18   Any party may move for summary judgment, and the Court shall grant summary

19   judgment if the movant shows that there is no genuine dispute as to any material fact and the

20   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

21   omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's

22   position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

23   particular parts of materials in the record, including but not limited to depositions, documents,

24   declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

25   absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

26   support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider

27   other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R.

28

1   Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir.

2   2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

3       In judging the evidence at the summary judgment stage, the Court does not make

4   credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509

5   F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

6   inferences in the light most favorable to the nonmoving party and determine whether a genuine

7   issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v.</u>

8   <u>City of Redondo Beach</u>, 657 F.3d at 942 (quotation marks and citation omitted).

9       In arriving at these Findings and Recommendations, the Court carefully reviewed and

10  considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

11  facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

12  reference to an argument, document, paper, or objection is not to be construed to the effect that

13  this Court did not consider the argument, document, paper, or objection. This Court thoroughly

14  reviewed and considered the evidence it deemed admissible, material, and appropriate.

15      **B.     Statutory Exhaustion Requirement**

16      The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such

17  administrative remedies as are available" before commencing a suit challenging prison

18  conditions."   42 U.S.C. § 1997e(a); <u>see also</u> <u>Ross v. Blake</u>, 578 U.S. 1174 (2016) ("An inmate,

19  that is, must exhaust available remedies, but need not exhaust unavailable ones.").  Exhaustion is

20  mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long

21  as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies

22  … available,' and the prisoner need not further pursue the grievance."  <u>Brown v. Valoff</u>, 422

23  F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing <u>Booth v. Churner</u>, 532 U.S. 731, 739

24  (2001)).

25      This statutory exhaustion requirement applies to all inmate suits about prison life, <u>Porter</u>

26  <u>v. Nussle</u>, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by

27  the prisoner or the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. at 741, and

28  unexhausted claims may not be brought to court, <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007) (citing

1  Porter, 534 U.S. at 524).

2         The failure to exhaust is an affirmative defense, and the defendants bear the burden of

3  raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d

4  1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of

5  the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at

6  1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they

7  are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the

8  light most favorable to the plaintiff, shows he failed to exhaust.  Id.

9                                         **III.**

10                                    **DISCUSSION**

11  **A.      Description of CDCR's Administrative Remedy Process**

12         Plaintiff is a state prisoner in the custody of the California Department of Corrections and

13  Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate

14  grievances.  Cal. Code Regs. tit. 15, § 3084.1 (2014).  Compliance with section 1997e(a) is

15  mandatory and state prisoners are required to exhaust CDCR's administrative remedy process

16  prior to filing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v.

17  Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010).  CDCR's administrative grievance process for non-

18  medical appeals consists of three levels of review: (1) first level formal written appeals; (2)

19  second level appeal to the Warden or designees; and (3) third level appeal to the Office of

20  Appeals (OOA).  Inmates are required to submit appeals on a standardized form (CDCR Form

21  602), attach necessary supporting documentation, and submit the appeal within thirty days of the

22  disputed event.  Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).  The California Code of

23  Regulations also requires the following:

       The inmate or parolee shall list all staff member(s) involved and shall describe their
24     involvement in the issue.  To assist in the identification of staff members, the inmate or
       parolee shall include the staff member's last name, first initial, title or position, if known,
25     and the dates of the staff member's involvement in the issue under appeal.  If the inmate
       or parolee does not have the requested identifying information about the staff member(s),
26     he or she shall provide any other available information that would assist the appeals
       coordinator in making a reasonable attempt to identify the staff member(s) in question.
27

28

1  Cal. Code Regs. tit. 15, § 3084.2(a)(3).[1]

2           B.    **Summary of Plaintiff's Complaint**

3           On October 1, 2015, Plaintiff was transferred to the Substance Abuse Treatment Facility

4  and State Prison, Corcoran (SATF), Facility B, Building One, Section C.  While housed there,

5  Plaintiff noticed signs of water leakage and black mold on every wall in the pod where his bunk

6  was located as well as in the showers and dayrooms in Building One.

7           Plaintiff was subsequently transferred to Building Three and the mold and water  damage

8  conditions were identical to those in Building One.  During his entire time at SATF, Plaintiff

9  never saw either maintenance or inmate workers clean up the water damage or mold in Buildings

10  One and Three.  When Plaintiff would ask the building officers about the mold clean-up, they

11  told him works orders had been submitted but that no clean-up occurred as a result.  Plaintiff was

12  instructed to file an inmate grievance.  Plaintiff regularly went to the yard dining hall for meals

13  where there was water and mold damage as well as other contamination.  Plaintiff was at that

14  time ignorant of the negative health impact of breathing black mold.  There were no signs posted

15  at SATF that advised or warned inmates of the presence of mold or other damages to an inmate's

16  health.  Plaintiff began to suffer flu-like symptoms, including night sweats, hot skin and eyes,

17  and repeated memory loss.  In addition, Plaintiff suffered dizziness, disorientation, being off

18  balance, and difficulty breathing and concentrating.  Plaintiff suffered most or all of the

19  foregoing symptoms for the majority of the approximately three years he was housed at SATF.

20  Plaintiff did not suffer any of the symptoms prior to his transfer to SATF.

21           Plaintiff initially believed his medications were the cause of his symptoms.  However,

22  after a change in Plaintiff's medications, the symptoms did not abate and instead worsened.

23  Plaintiff suspected that it might be Valley Fever but he subsequently tested negative for the

24  condition.

25

26  _____

[1]  Effective June 1, 2020, the new rules are set out in Cal. Code Regs. tit. 15, §§ 3480–3486. For purposes of these
27  Findings and Recommendations, all citations refer to the regulations which were effective at the time relevant to
Plaintiff's claims.

28

Doctors at SATF that examined Plaintiff either could not determine the cause of his symptoms, or in fact knew, based on their knowledge of the pervasive mold problem at SATF and their experience with inmates sickened by mold, it was the result of black mold but pretended not to know.

Plaintiff was subsequently shown a pamphlet from the San Quentin Prison Law Office (PLO) discussing the black mold contamination problem impacting California prisons, including SATF.  Plaintiff learned that black mold has both long and short term effects on an individual's health.  The symptoms identified in the pamphlet matched the symptoms that Plaintiff was experiencing.  After learning of the connection between Plaintiff's symptoms and the exposure to black mold, Plaintiff submitted an administrative appeal, dated May 18, 2018, requesting that all SATF buildings be cleaned and/or that he be transferred out of SATF.  Plaintiff was denied a transfer.  Defendants Martin and Morales rejected Plaintiff's appeal at the first level review on June 2, 2018.  Defendant Sherman rejected the appeal at the second level on August 27, 2018.  Defendant Allen rejected the appeal at the final level of review on July 29, 2019.  In response to the appeal, Defendant Sherman confirmed the presence of mildew in Building One, Facility B.  Mildew is fungus which usually leads to mold.  Mold was also discovered but not admitted in the appeal responses.

Plaintiff eventually began to suffer problems in his genitals which was also caused by exposure to the black mold.  Plaintiff initially thought it was cancer until a biopsy was negative.  Plaintiff then began to experience Bell's Palsy attacks and bronchospasm which were both diagnosed by doctors.  Plaintiff is now required to take Xopenex through an oral inhaler for the bronchospasms.  Medical staff informed him that nothing could be done for the Bell's Palsy.  Plaintiff's health has otherwise continued to decline.

In January 2017, there were leak problems in Facility A which caused hazardous living conditions.  Fifty-seven SATF inmates submitted an administrative appeal about the issue.  The problems in building A-2, and perhaps throughout the entire prison had, as of January 2017, existed and had been addressed to prison plant operations management for several years.  A

6

1  response to the one inmate appeal stated that the leaking problems had been addressed to the

2  "highest authority" at SATF.

3      In February 2017, leaking water problems impacted all areas of SATF, including inmate

4  sleeping areas, dayrooms, dining halls, and gyms.  The PLO reported this fact to the CDCR staff

5  in February 2017.  As of February 2017, SATF staff had been aware of the leakage and mold

6  problems for years without making progress in permanently repairing roof and other areas.

7      In February 2017, there was massive leaking and toxic mold problems in the SATF

8  Facility A dining hall.  Sixty-one SATF inmates submitted an administrative appeal on the

9  matter in February 2017.  The Associate Hazardous Material Specialist at the time agreed that

10 ceiling tiles "could be an issue" and stated that a work order was submitted for removal of the

11 damaged ceiling tiles.  Attempts to establish a schedule with the Facility A Captain for the

12 repairs failed.  A month later, significant mold growth in the dining hall remained.  There was

13 also significant mold growth in Facility A visitation areas.

14     In March 2017, PLO observed, during a litigation-related tour, significant water damage

15 visible throughout SATF and significant leakage-related mold growth in "many areas" of SATF,

16 including dining halls, inmate sleeping areas, and visiting areas.  The PLO notified CDCR

17 Headquarters staff (Secretary of CDCR, Scott Kernan), by a letter with photographs, of the

18 foregoing conditions in April 2017.  There was a proliferation of small black worms and winged

19 bugs surrounding faucets and drains in all Facility A and Facility B.  SATF staff had not

20 provided a solution this widespread, a failure which forced inmates and lower ranking staff to

21 utilize homemade and largely ineffective measures to combat the problem.  SATF staff had

22 repeatedly submitted work orders for leakage and mold problems which had not been completed.

23 There was also visible leaking and mold growth in the toilet and shower areas during the March

24 2017 tour.

25     There was also water leaking on Facility B building 3, and Facilities D and F for which

26 work orders were submitted but remained unaddressed.  A leaking roof, black mold, and fungus

27 was reported in January 2017 at SATF.  In March 2017, staff reported to PLO, that leaking and

28 mold, including in the denial hall, had been a problem for years.  There were leaking problems in

all areas of SATF dating back to April 2014.  In a December 6, 2017, letter to CDCR Headquarters and Secretary Kernan, PLO advised of the aforementioned dangers and unsafe living conditions at SATF.  As of December 2017, the dangerous conditions had been reported for years.

SATF administrative staff were aware of the foregoing problems and failed to permanently repair roofs and other areas to stop and prevent leaks and mold, and failed to clean or otherwise remove mold, despite work orders for such repairs.  The foregoing problems were reported by PLO to SATF staff and CDCR Headquarters staff as described above.  The aforementioned SATF sanitation, repair, and maintenance problems and failures, including but not limited to the linkage, water damage, and mold problems, were pervasive throughout both Facilities A and B, while Plaintiff was housed at SATF for years.

Staff submitted many work orders requesting roof and other repairs to prevent water leakage and clean-up mold and water damage throughout the time Plaintiff was housed at SATF and for years prior to his transfer.  Most or all of the aforementioned work orders went unfulfilled for significant periods and/or continued to be unfilled throughout the time Plaintiff was housed at SAFT and for years prior to his transfer thereto.  SATF inmates submitted many administrative appeals and other forms of request and complaint to the appeals coordinator and other responsible staff at SATF complaining about the aforementioned leakage and mold problems and seeking, without avail, proper repairs, clean-up, or otherwise corrective measures.  Said inmate appeals, requests, and complaints were submitted throughout the time I was housed at SATF and for years prior to my transfer thereto.

Each Defendant named in this action had knowledge of the aforementioned pervasive leakage and mold problems at SATF, and of the substantial medical risk it exposed to Plaintiff and all other inmates.  Defendants obtained such knowledge from personal observation, appeals, requests, and complaints from inmates and other staff, submitted work orders, inmate medical reports, reports from the PLO or other sources, and lawsuits against CDCR.  Defendants had such knowledge throughout the time that Plaintiff was housed at SATF and for years prior to his transfer.  Despite being in a position to conduct or facilitate clean-up, repairs, or other actions to

1   prevent and/or correct the aforementioned leakage and mold problems through allocation and use

2   of funds or other actions, Defendants failed to do so knowing disregard of said risk.  Defendants

3   had such knowledge, were in a position to take corrective measures, and failed to do so in

4   knowing disregard throughout the time Plaintiff was housed at SATF and for years prior to his

5   transfer.

6          Each Defendant also failed to warn Plaintiff of the health risks of exposure to mold.

7   Defendants failed to post or cause to be posted signage within the housing unit or elsewhere at

8   SATF alerting me and other inmates of the long and short term medical impact of exposure to

9   mold.  That failure deprived Plaintiff of the ability to timely identify the source of my

10  aforementioned symptoms and seek appropriate medical care which caused his condition to

11  worsen.

12         **A.    Statement of Undisputed Facts[2],[3]**

13         1.     Plaintiff Karriem Shaheed is an inmate in the custody of CDCR, and was housed

14  at SATF during the relevant period.  (ECF No. 14 at 7.)

15         2.     Defendant Kernan is the former Secretary of CDCR, while Defendant Sherman is

16  SATF's former Warden.  Defendant Martin is a Correctional Sergeant at SATF and Defendant

17  Burden is a Correctional Lieutenant at the prison.  Defendant Allen is an appeals examiner who

18  signed the third level decision in connection with Plaintiff's administrative appeal.  (ECF No. 14

19  at 4-5.)

20         3.     Plaintiff asserts that after arriving at SATF in October 2015, he noticed signs of

21  water leakage and black mold on every wall in the pod where his bunk was located, as well as in

22  the showers and dayrooms in Building One.  (ECF No. 14 at 7.)

23

24  [2] Hereinafter referred to as "UF."

25  [3] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by
    Defendants as undisputed.  Local Rule 56-260(b).  Therefore, Defendants' statement of undisputed facts is accepted
26  except where brought into dispute by Plaintiff's verified second amended complaint.  Jones v. Blanas, 393 F.3d 918,
    923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal
27  knowledge of specific facts which are admissible in evidence).

28

1    4.    Plaintiff was later transferred to Building Three, which allegedly had similar mold

2 and water conditions.  Plaintiff claims that he never saw either maintenance or inmate workers

3 clean up the water damage or mold in the buildings.  He was allegedly told that work orders were

4 submitted for clean-up of the areas, but no clean-up occurred as a result of those requests.  (ECF

5 No. 14 at 7.)

6    5.    Plaintiff allegedly began to experience, among other things, flu-like symptoms,

7 night sweats, hot skin and eyes, repeated memory loss, dizziness, and disorientation.  He also had

8 difficulty breathing and concentrating.  (ECF No. 14 at 7.)

9    6.    At some point in 2018, Plaintiff read a pamphlet discussing the black mold

10 contamination problem impacting California prison, including SATF.  The symptoms mentioned

11 in the pamphlet matched the symptoms that Plaintiff had been experiencing.  (ECF No. 14 at 8.)

12    7.    Plaintiff's medical records indicate that he never complained of such conditions

13 while housed at SATF.  On September 30, 2018, roughly five weeks after being transferred from

14 SATF to the Correctional Training Facility, Plaintiff first complained about "hot skin and eyes,

15 memory loss, dizziness, disorientation, difficulty concentrating, and feeling off balance most of

16 the time."  Plaintiff did not mention such symptoms while meeting with Correctional Training

17 Facility physicians on September 13, 2018 or November 6, 2018.  (Declaration of Posson

18 (Posson Decl.) ¶ 11, Exs. D & E.)

19    8.    Plaintiff's complaint also alleges that he began to experience Bell's Palsy after

20 leaving SATF.  (ECF No. 14 at 9.)

21    9.    Plaintiff's records indicate that on December 27, 2018, several months after being

22 transferred from SATF to the Correctional Training Facility, he was diagnosed with a mild case

23 of Bell's Palsy on the left side of his face.  During a follow-up appointment on January 15, 2019,

24 his physician noted that Plaintiff's facial asymmetry had resolved.  There is no other mention

25 Bell's Palsy in Plaintiff's medical records following that January 2019 exam.  (Posson Decl. ¶ 7

26 & Ex. A.)

27    10.    Plaintiff's medical records further indicate that while he was diagnosed with

28

1  asthma in April 2020, the condition is currently inactive.  Bronchospasm is a component of

2  asthma.  (Posson Decl. ¶ 8.)

3       11.    Plaintiff claims that after leaving SATF, he experienced bronchospasm, which

4  involve any combination of coughing, wheezing, or shortness of breath.  (ECF No. 14 at 9.)

5       12.    There is no mention of bronchospasms in Plaintiff's medical records before 2020.

6  A review of Plaintiff's medical records reveals that on January 29, 2020, Plaintiff complained of

7  a cough, shortness of breath, and wheezing.  He was treated for his bronchospasm with a

8  Levalbuterol inhaler (a broncho dilator medication), and was sent back to housing in improved

9  condition.  The condition had resolved by the next day, when he had a follow-up appointment.

10  (Posson Decl. ¶ 9 & Ex. B.)

11       13.    During another medical appointment on April 24, 2020, the doctor noted that

12  Plaintiff had been having symptoms of bronchospasm since an upper respiratory infection or

13  bronchitis several months before.  The doctor added that if Plaintiff had persistent symptoms, he

14  would probably benefit from spirometry after COVID restrictions are listed.  (Posson Decl. ¶ 10

15  & Ex. C.)

16       14.    Attached to Plaintiff's second amended complaint is inmate appeal SATF-B-18-

17  2983, which discusses the health issues that he allegedly experienced after he was exposed to

18  black mold at the prison.  That administrative appeal does not mention Defendants Martin,

19  Burden, and Allen.  (ECF No. 14 at 31-52.)

20       15.    It appears that those Defendants did not encounter Plaintiff until after he filed his

21  appeal.  At various points, Defendants Martin and Burden interviewed Plaintiff concerning the

22  allegations in his appeal, while Defendant Allen signed the third level decision.  (ECF No. 14 at

23  37-40.)

24       **B.**     **Analysis of Defendants' Motion**

25       Defendants Martin, Burden, and Allen argue that Plaintiff failed to exhaust the

26  administrative remedies as to the claims against them.  Defendants further argue the evidence

27  establishes that SATF prison officials engaged in numerous maintenance and repair projects in

28  an effort to improve facilities at the prison while Plaintiff was housed there.

1        1.      Exhaustion of Administrative Remedies

2        Defendants Martin, Burden, and Allen argue that inmate appeal SATF-B-18-2893,

3   attached to Plaintiff's second amended complaint, failed to include an Eighth Amendment claim

4   against them.  Defendants have not produced independent evidence aside from that attached to

5   Plaintiff's second amended complaint to demonstrate that Plaintiff failed to exhaust the

6   administrative remedies as to the claims against them.  Thus, Defendants essentially argue that it

7   is clear from the face of the second amended complaint that Plaintiff failed to exhaust his

8   administrative remedies as to Martin, Burden, and Allen.  The Court does not agree.

9        On the second amended complaint form, Plaintiff checks the box "yes" in response to

10  whether the administrative remedies were exhausted to the highest level of review.  (ECF No. 14

11  at  4.)  Plaintiff specifically stated relief was partially granted and partially denied at the first and

12  second levels of review and relief was denied at the third level of review.  (Id.)  Although

13  Plaintiff attaches inmate appeal SATF-B-18-2393 and OOA-18-13530, an inmate is not required

14  to submit evidence to demonstrate exhaustion.  Neither the PLRA nor the Federal Rules of Civil

15  Procedure require inmates to specifically plead or demonstrate administrative exhaustion in

16  their complaints.  Jones v. Bock, 549 U.S. at 216–17. A failure to exhaust is an affirmative

17  defense that defendants must plead and prove.  Id. at 204, 216.  Ordinarily, "defendants must

18  produce evidence proving failure to exhaust in order to carry their burden," which makes it more

19  appropriately raised in a motion for summary judgment.  Albino v. Baca, 747 F.3d at 1166. "If

20  undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

21  exhaust, a defendant is entitled to summary judgment" under Federal Rule of Civil Procedure

22  56. Id.  However, "in the rare event that a failure to exhaust is clear on the face of the complaint,

23  a defendant may move for dismissal under Rule 12(b)(6).

24       Defendants have not carried their ultimate burden in proving that Plaintiff failed to

25  exhaust given there is no evidence that no other relevant appeals were filed.  It is possible that

26  the boxes checked in the second amended complaint form refer to a different grievance that was

27  not attached or that other appeals were filed that were not listed on the complaint form.  Plaintiff

28  was not required to allege, much less prove, exhaustion in the complaint. See Albino v. Baca,

1  747 F.3d at 1169. Instead, the burden is on Defendants to establish that this is one of the "rare"

2  cases in which the lack of exhaustion can be determined on the face of the complaint. Id. at 1168,

3  1169. Defendants have not done so.  The Court finds this case is not one of the "rare events"

4  where a failure to exhaust is clear on the face of the complaint. Id. at 1166. Instead, it is one of

5  the more typical events where facts must be developed and presented to support the affirmative

6  defense.  Thus, drawing all reasonable inferences in favor of Plaintiff, the Court finds the second

7  amended complaint and its attachments standing alone do not clearly show that Plaintiff's

8  administrative remedy was effectively available.

9      In addition, it is not clear, from the face of the complaint, that Plaintiff was required to

10  file another round of administrative grievances challenging the denial of Plaintiff's grievance by

11  Defendants Martin, Burden, and Allen.  See, e.g., Grant v. Cate, No. 2:14-cv-1867 MCE KJN P,

12  2016 WL 7116714, at *8 (E.D. Cal. Dec. 7, 2016) ("[A]n individual who denies an inmate

13  appeal and who had the authority and opportunity to prevent an ongoing constitutional violation

14  could potentially be subject to liability if the individual knew about an existing or impending

15  violation and failed to prevent it.") (citing Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006));

16  see also Damian v. Breen, No. 2:18-cv-00412-MWF (MAA), 2020 WL 7496314, at *8 (C.D.

17  Cal. Nov. 13, 2020) ("The policy underlying the PLRA exhaustion requirement would not be

18  served by requiring an aggrieved prisoner to begin a separate, largely duplicative round of

19  administrative appeals every time another administrative reviewer manifests the same type of

20  alleged deliberate indifference to the same type of alleged medical need.")  Furthermore, a

21  subsequent grievance may have been rejected as duplicative of inmate appeal SATF-B-18-2893.

22  Accordingly, the Court recommends that Defendants' motion for summary judgment for failure

23  to exhaust the administrative remedies be denied.

24      2.      Merits of Plaintiff's Eighth Amendment Claim

25      Defendants argue that there is no evidence that Plaintiff was exposed to black mold

26  (Stachybotrys chartarum) while he was housed in Buildings One and Three, and prison staff

27  implemented several protects to repair and maintain Buildings One and Three to ensure that

28  block mold was not present.

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th 2006) (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to her health or safety. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). A deliberate indifference claim has both a subjective and an objective element. Helling v. McKinney, 509 U.S. 25, 35 (1993); Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014)); Lopez v. Smith, 203 F.3d 1122, 1133 (9th Cir. 2000); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 83; Frost, 152 F.3d at 1128.

To meet the objective element of the deliberate indifference standard, a plaintiff must demonstrate the existence of a serious risk to his health or safety. Helling, 509 U.S. at 35; Colwell, 763 F.3d at 1066. A prison official is deliberately indifferent under the subjective element of the test only if the official "knows of and disregards an excessive risk to inmate health and safety." Colwell, 763 F.3d at 1066. The subjective component requires the plaintiff to show that the official knew of and disregarded the substantial risk of harm. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002.) Deliberate indifference requires more than just a lack of due care, the prison official must be both aware of the facts from which an inference can be drawn that the substantial risk of serious harm exists and he must also draw the inference.

1  Colwell, 763 F.3d at 1066.  The subjective element focuses on the defendant's state of mind.

2  Toguchi, 391 F.3d at 1057.

3         Exposure to black mold while housed in a prison may give rise to a claim for deliberate

4  indifference.  Jay v. Fresno County Jail, No. 1:10-cv-0072 SMS PC, 2011 WL 841373 at *2

5  (Mar. 4, 2011) (noting "exposure to toxic mold may support a claim for unconstitutional

6  conditions of confinement").

7         Defendants submit the declaration of F. Florez, Associate Hazardous Material Specialist

8  (AHMS) at the California Substance Abuse Treatment Facility and State Prison, Corcoran

9  (SATF).  Mr. Florez declares that SATF officials have taken reasonable steps to correct the

10 mildew issues described in Plaintiff's second amended complaint, including repairing leaky roofs

11 and providing inmates with "Cell Block 64," a powerful, hospital grade, neutral pH disinfectant

12 that cleans and deodorizes, and can be used to eliminate mildew from cells and shower areas.

13 (Declaration of F. Florez (Florez Decl.) ¶ 2, ECF No. 28-1.)  All of the tests have been negative

14 for black mold since 2015.  (Florez Decl. ¶ 2.)  Between 2015 and 2018, prison staff have

15 conducted maintenance in SATF'S B-1 Facility, including a roof inspection in May 2018,

16 removal of damaged ceiling titles and surfaces between August and October 2017, and painting

17 the interior of the building in May and June 2016.  (Florez Decl. ¶ 3, Exs. A-C.)  In addition,

18 between 2015 and 2018, prison staff conducted maintenance in SATF's B-3 Facility, including a

19 roof inspection in August 2018, roof inspection in July 2018, painting portions of the walls of the

20 B-3 facility in June and July 2018, painting and sanding portions of another wall in the B-3

21 facility in June 2018, roof inspection in 2018, roof inspection in March 2018, roof inspection in

22 January 2018, roof inspection in December 2017, roof inspection in October 2017, roof

23 inspection in September 2017, roof inspection in November 2016, roof inspection in September

24 2016, and replacement of tile and grout in June 2016 and January 2018.  (Florez Decl. ¶ 4, Exs.

25 D-P.)

26        Plaintiff has failed to submit evidence demonstrating that there was hazardous black mold

27 at SATF Buildings One and Three from 2015 to 2018.  In contrast, as reflected above,

28 Defendants have submitted evidence demonstrating that from the date of Plaintiff's transfer to

SATF in 2015 to the time he filed an administrative grievance in 2018, prison officials took various actions in repairing and maintaining Buildings One and Three specifically aimed at addressing any black mold.  Mr. Florez declares, under penalty of perjury, that he sent numerous samples of affected areas at the prison for testing since 2015, and all tests were negative for black mold (Stachybotrys chariarum).  (Florez Decl. ¶ 2.)  As mentioned, staff repeatedly inspected the rooves of both buildings during that period, and replaced both buildings' rooves in 2018.  (Florez Decl. ¶¶ 3-5.)  In addition, various portions of the buildings were also painted during that time, and damaged tile and grout were replaced.  (Florez Decl. ¶ 4.)  That Plaintiff subsequently disagreed to the method by which the repairs and/or maintenance was carried out does not indicate Defendants acted recklessly, let alone wantonly with respect to Plaintiff's health and safety.  Colwell, 763 F.3d at 1066; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (holding prison officer violates the Eighth Amendment if he inflicts pain that is wanton and unnecessary upon an incarcerated individual.)

Furthermore, in 2016, following the California Department of Public Health's annual inspection of the facilities at SATF, it ordered prison officials to provide additional training to inmate-porters regrading the mixing procedure for Cell Block 64, which is used to clean mildew from cells and showers.  (Florez Decl. ¶ 6.)  Such training was conducted between June 2016 and December 2016.  (Id.)

Moreover, there is no evidence that Plaintiff complained about his medical condition while he was housed at SATF.  In the operative complaint, Plaintiff claims that due to his housing at SATF and his alleged exposure to mold, he "began to suffer flu-like symptoms, including night sweats, hot skin and eyes, and repeated memory loss, and also "suffered dizziness, disorientation, being off balance [sic], and difficulty breathing and concentrating." (ECF No. 14 at 7.)  However, Defendants submit the declaration of Dr. Posson declares that Plaintiff's medical records reveal he never complained of such conditions while housed at

SATF.[4]  (Declaration of Dr. Posson (Posson Decl.) ¶ 11, ECF No. 28-2.)  More specifically, on September 30, 2018, roughly five weeks after being transferred from SATF to the Correctional Training Facility, Plaintiff first complained about "hot skin and eyes, memory loss, dizziness, disorientation, difficulty concentrating, and feeling off balance most of the time."  (UF 7.) Plaintiff did not mention such symptoms while meeting with Correctional Training Facility physicians on September 13, 2018 or November 6, 2018.  (UF 7.)  Plaintiff contends he began to experience Bell's Palsy after leaving SATF, and his medical records reflect that on December 27, 2018, several months after being transferred from SATF, he was diagnosed with a mild case of Bell's Palsy on the left side of his face.  (UF 9.)  However, during a follow-up appointment on January 15, 2019, his physician noted that Plaintiff's facial asymmetry had resolved.  (UF 9.) There is no further mention of Bell's Palsy in Plaintiff's medical records following the January 2019 exam.  (UF 9.)  In addition, although Plaintiff's medical records indicate he was diagnosed with asthma in April 2020, the condition is currently inactive.  (UF 10.)  Plaintiff also complains that he experienced bronchospasm, which involve any combination of coughing, wheezing, or shortness of breath.  (UF 11.)  Plaintiff was treated for bronchospasm with a Levalbuterol inhaler (a broncho dilator medication), and was sent back to housing in improved condition.  (UF 12.) When Plaintiff had a follow-up the next day, his condition had resolved.  (UF 12.)  During another medical appointment on April 24, 2020, the doctor noted that Plaintiff had been experiencing symptoms of bronchospasm since an upper respiratory infection or bronchitis several months before.  (UF 13.)  The doctor noted that if Plaintiff had persistent symptoms, he would likely benefit from spirometry after COVID restrictions are lifted.  (UF 13.)

In conclusion, the fact that prison officials undertook numerous projects to repair and maintain Buildings One and Three, tested various areas to ensure there was not black mold, and used Cell Block 64 to clean the facilities, establishes that Plaintiff was not subjected to

---

[4] Dr. Posson has served as the Chief Medical Executive since March 2015, and is responsible for administering the Correctional Training Facility's medical program, ensuring the quality of treatment and diagnosis, and responding to certain inmate health-care appeals concerning medical treatment. (Posson Decl. ¶ 2.)  He also supervises a Chief Physical and Surgeon in her duties of day-to-day management of care teams, and is responsible for utilization management of delivery of healthcare services to more than 4,000 inmates.  (Id.)

unconstitutional conditions of confinement in violation of the Eighth Amendment while housed at SATF.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion for summary judgment for failure to exhaust the administrative remedies be denied;

2.      Defendants' motion for summary judgment on the merit of Plaintiff's Eighth Amendment deliberate indifference claim be granted; and

3.      Judgment be entered in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**August 25, 2022**__

_____

UNITED STATES MAGISTRATE JUDGE